UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 18-523 (DSD/HB)

Sirri A. Nomo-Ongolo
M.D.,

       Plaintiff,

v.                                      **ORDER**

Secretary of the U.S. Department
of Health and Human Services,

       Defendant.

    Carol R. M. Moss, Esq., Terrance W. Moore, Esq. and Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, MN 55439, counsel for plaintiff.

    Friedrich A. P. Siekert, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, counsel for defendant.

This matter is before the court upon the cross-motions for summary judgment by defendant Alex M. Azar, Secretary of the United States Department of Health and Human Services (Secretary) and plaintiff Sirri A. Nomo-Ongolo, M.D., Ph.D. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the Secretary's motion and grants Nomo-Ongolo's motion.

**BACKGROUND**

This dispute arises out of the Secretary's decision to exclude Nomo-Ongolo's participation as a health care provider in federal health care programs. Nomo-Ongolo is a licensed physician. Admin. Rec. at 345. She has practiced medicine in Minnesota for the past

sixteen years.  Id.  From March 2013 until April 2015, Nomo-Ongolo worked for Addiction Care Practitioners, PA (Clinic) in Crystal, Minnesota, specializing in opiate dependency treatment.  Id.  Nomo-Ongolo was a Clinic employee and did not own or manage the Clinic.[1]  Id. at 66.  Nomo-Ongolo claims that she was not involved with patient billing and never requested or received payments from Clinic patients.  Id. at 345-46.

On January 13, 2015, Nomo-Ongolo received a termination notice from the Minnesota Department of Human Services (MDHS).  Id. at 356.  MDHS explained that Nomo-Ongolo could no longer participate as a medical provider in the Minnesota Health Care Program (MHCP) because she had violated MHCP rules by requesting and receiving forty-six direct cash payments from Clinic patients.  Id.

On February 2, 2015, Nomo-Ongolo, through her attorney, appealed the termination notice and denied responsibility for the Clinic's patient billing errors.  Id. at 361.  Nomo-Ongolo also claimed that the Clinic, which had received a separate MDHS termination notice, acknowledged its billing practices did not comply with MHCP and its "office manager and owner ... apologized [to her]... and [accepted] full responsibility for [the billing]

---

[1] Dr. Arthur Fretag was the Clinic's chief executive officer during Nomo-Ongolo's employment.  Id. at 226.

error[s]."² Id. at 362.

On February 19, 2015, MDHS responded to Nomo-Ongolo's appeal, arguing that the Clinic's records showed that Nomo-Ongolo's patients had signed opiate-dependency treatment plans and agreed to directly pay the Clinic $300 per month. Id. at 55. MDHS also asserted that Nomo-Ongolo's patient payment ledgers showed assorted cash payments and MHCP drug authorizations issued in her name. Id. MDHS argued that the evidence demonstrated that Nomo-Ongolo knew, or should have known, that her MHCP-covered patients were paying cash for treatments. Id.

MDHS referred Nomo-Ongolo's appeal to the Minnesota Attorney General's Office. Id. at 363. MDHS permitted Nomo-Ongolo to treat MHCP-covered patients pending her appeal. Id. On May 18, 2015, the Minnesota Office of Administrative Hearings scheduled the matter for a June 30, 2015, prehearing conference. Id. at 365.

In early June 2015, Nomo-Ongolo's attorney withdrew his representation. Id. at 345. On June 29, 2015, Assistant Minnesota Attorney General Heather N. Kjos called Nomo-Ongolo about the prehearing conference and told Nomo-Ongolo that her attorney had withdrawn. Id. at 209. During their conversation, Nomo-Ongolo claims that she and Kjos reached an agreement whereby Nomo-Ongolo

---

² At the hearing, Nomo-Ongolo's counsel reported that the Minnesota Board of Medicine revoked the Clinic's license, and that the Clinic closed after Nomo-Ongolo's employment.

3

would voluntarily opt out of MHCP, and in exchange, MDHS would drop its case. Id. Nomo-Ongolo also claims that she and Kjos agreed that the only consequence of the withdrawal would be that Nomo-Ongolo's appeal would be dismissed and she would stop treating MHCP-covered patients.[3] Id. at 346; see also id. at 209.

Later that day, Kjos informed Administrative Law Judge (ALJ) Eric L. Lipman that Nomo-Ongolo had withdrawn her appeal. Id. at 211. On June 30, 2015, the ALJ canceled the prehearing conference and all additional administrative proceedings, and dismissed Nomo-Ongolo's appeal. Id. at 204; see also id. at 210.

On July 9, 2015, MDHS terminated Nolo-Ongolo's participation in MHCP, effective July 1, 2015. Id. at 207. Nolo-Ongolo was advised that she could apply for reinstatement in MHCP on July 1, 2020. Id.

On November 30, 2016, the United States Department of Health and Human Services, Office of Inspector General (OIG) notified Nomo-Ongolo that she was being excluded from participation in all federal health programs under Section 1128(b)(5)(B) of the Social Security Act and 42 C.F.R. § 1001.601(a)(1)(ii), because she had been suspended, excluded, or otherwise sanctioned by MDHS for reasons bearing on her professional competence or performance, or

---

[3] It appears that during their conversation, Nomo-Ongolo and Kjos discussed reinstatement in MHCP. In a follow-up email, Nomo-Ongolo told Kjos that she would apply for reinstatement in MHCP in five years. Id. at 209.

4

financial integrity. Id. at 348. The OIG's exclusion notice informed Nomo-Ongolo that she could apply for federal reinstatement after she was reinstated in MHCP. Id. at 349.

On January 18, 2017, Nomo-Ongolo appealed the OIG's exclusion notice and requested a hearing before an ALJ. Id. at 20. On February 13, 2017, a telephonic hearing was held before ALJ Keith Sickendick. Id. at 2. On July 10, 2017, the ALJ affirmed Nomo-Ongolo's exclusion. Id. at 1–8. In affirming, the ALJ found that Nomo-Ongolo's exclusion was appropriate because she was "otherwise sanctioned" by MDHS for reasons bearing on her financial integrity.[4] Id. at 5. Specifically the ALJ determined that Nomo-Ongolo voluntarily withdrew her appeal with the intent to avoid MDHS sanctions. Id. The ALJ also determined that although there had been no state adjudicative findings bearing on Nomo-Ongolo's financial integrity, there was a nexus between the improper cash payment allegations contained in the termination notice and her eventual termination from MHCP, which the ALJ found "[was] clearly an attack upon and related to [Nomo-Ongolo's] financial integrity." Id. at 6.

---

[4] Section 1128(b)(5) does not define the term "otherwise sanctioned," however, 42 C.F.R. § 1001.601(a)(2) defines the term as "all actions that limit the ability of a person to participate in the [state] program ... and includes situations where an individual or entity voluntarily withdraws from a program to avoid a formal sanction."

5

On September 7, 2017, Nomo-Ongolo appealed the ALJ's decision to the United States Department of Health and Human Services Appeals Board. Id. at 278. On December 18, 2017, the Appeals Board affirmed. Id. at 10. However, the Appeals Board's analysis differed from that of the ALJ's. The Appeals Board found that Nomo-Ongolo was not "otherwise sanctioned" by MDHS, but rather that her termination from MHCP constituted a state "exclusion" for reasons bearing on her financial integrity. Id. at 14. The Appeals Board further found that MDHS had not dropped Nomo-Ongolo's case in exchange for the withdrawal of her appeal, but that the termination notice constituted a state exclusion when the ALJ dismissed her appeal. Id. at 13-14. The Appeals Board acknowledged that there had been no state hearing or findings of fact issued on the cash payment allegations, but concluded that MDHS' investigative allegations were sufficient for the OIG to exercise its permissive exclusionary authority given that she had withdrawn her appeal. Id. at 16.

On February 23, 2018, Nomo-Ongolo commenced this action seeking judicial review of the Secretary's final decision excluding her from participation in all federal health care programs.[5] The

---

[5] The Appeals Board's decision is the Secretary's final agency decision. See 42 C.F.R. § 1005.21(j). Judicial review of the Secretary's final decision is authorized under Sections 1128(f)(1) and 205(g) of the Social Security Act. Section 205(g) permits the court to reverse, modify, or affirm the Secretary's final decision "with or without remanding the cause for a rehearing." A court may review the OIG's exclusion to determine:

6

parties now cross move for summary judgment. Nomo-Ongolo seeks reversal of the Secretary's final decision and reinstatement in all federal health programs and the Secretary seeks affirmance.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute

---

(1) whether the basis for the imposition of the sanction exists; and (2) whether the length of exclusion is reasonable. See 42 C.F.R. § 1001.2007(a)(1).

exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 322-23.

"The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." <u>Horras v. Leavitt</u>, 495 F.3d 894, 900 (8th Cir. 2007)(internal citations omitted); <u>see also</u> 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ...." <u>Horras</u>, 495 F.3d at 900 (internal citations omitted). "Therefore, if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court must] affirm the decision." <u>Id.</u>

A reviewing court holds unlawful and sets aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see also</u> 42 U.S.C. § 1395oo(f)(1). "To withstand judicial review under this standard, an agency must 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" <u>Grace Healthcare of Benton</u>

v. U.S. Dep't of Health and Human Servs., 603 F.3d 412, 422 (8th Cir. 2009)(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983)).

**II. Federal Exclusion**

Federal law permits the Secretary to permissively exclude individuals from participation in federal health programs who have been excluded, suspended, or otherwise sanctioned by a state health care program as follows:

> (b)Permissive Exclusion .... The Secretary may exclude the following individuals and entities from participation in any Federal health care program ....
>
> (5) Any individual or entity which has been suspended or excluded from participation, or otherwise sanctioned, under ...
>
> (B) a State health care program, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity.

Section 1128(b)(5)(B); see also 42 U.S.C. § 1320a-7(b)(5)(B). The Secretary has delegated its exclusionary authority to the OIG. See 42 C.F.R. § 1001.601(a)(1)(ii).

There is no dispute that Nomo-Ongolo was excluded from MHCP. See ECF No. 24 at 13. The only question is whether substantial evidence supports the OIG's determination that the state exclusion was for reasons that bear on her financial integrity. Nomo-Ongolo argues that substantial evidence does not support the Appeals Board's decision affirming the OIG's exclusion because there was no actual administrative finding, and the record does not show, that

9

she, rather than the Clinic, was responsible for the alleged improper cash payments. The court agrees.

The uncontroverted record shows that the termination notice alleged forty-six cash payments in violation of MHCP. Nomo-Ongolo denied responsibility with respect to those payments and appealed the termination notice. The day before the preconference hearing, Nomo-Ongolo withdrew her appeal because she reached an agreement with Kjos that the case would be dropped and she would not treat MHCP-covered patients until reinstated. The following day, the ALJ dismissed her appeal without making specific findings of fact regarding the underlying allegations.

The Secretary argues that the court's review of a derivative agency decision is narrow and the court should avoid reexamining the underlying state proceeding. However, under Section 1128(b)(B)(5) and § 1001.601(a)(1)(ii), the court is required to consider whether Nomo-Ongolo's state exclusion was for reasons bearing on her financial integrity. The only evidence adversely bearing on Nomo-Ongolo's financial integrity in the record is MHDS' vague and unsubstantiated investigative allegations, which she has steadfastly denied.

Indeed, the majority of the evidence in the whole record supports Nomo-Ongolo's claim that she was not involved with patient billing as a Clinic employee and was not responsible for the billing errors. The record shows that the Clinic acknowledged that

it was responsible for the billing errors and the parties do not dispute that the Clinic was independently sanctioned by MDHS. In addition, nothing in the record contradicts Nomo-Onogolo's claim that she withdrew her appeal because she and Kjos entered into an agreement whereby the state agreed to drop her case. In fact, there is no evidence in the record that Nomo-Ongolo dropped her appeal as an admission of guilt or wrongdoing. Moreover, the ALJ's dismissal order does not contain any findings of fact regarding Nomo-Ongolo's conduct. In this case, there was simply no adjudicatory proceeding evaluating MDHS' allegations.

The Secretary's reliance on Quayum v. U.S. Dep't of Health and Human Servs., 34 F. Supp. 2d 141, 143-144 (E.D.N.Y. 1998), is misplaced. Quayum included a far more developed state-level evidentiary record on the underlying perjury charge supporting the OIG's permissive exclusion, and the defendant-dentist, "admitted that he knowingly testified falsely before the grand jury under oath ...." Id. at 142. In contrast, Nomo-Ongolo has consistently maintained that she was not responsible for the Clinic's billing errors, and the Secretary offers no actual evidence to the contrary. The Secretary simply points to the termination notice as conclusive evidence of Nomo-Ongolo's guilt. In addition, in Quayum, the defendant was represented by counsel at the time he pleaded guilty and "was on notice that his conviction would be reported to the [OIG] ...." Id. at 144. Nomo-Ongolo was not

represented by counsel when she entered into an agreement with Kjos and she was not on notice that withdrawing her appeal would result in federal exclusion. Under the circumstances, Nomo-Ongolo reasonably assumed that no additional sanctions or proceedings would be forthcoming.

The court concludes that the termination notice alone does not constitute substantial evidence of wrongdoing bearing on Nomo-Ongolo's financial integrity in light of the record as a whole. The court specifically finds that MHDS' unsubstantiated and vague investigative allegations fail to establish a nexus between the state exclusion and Nomo-Ongolo's financial integrity.[6] As a result, the court must reverse the Secretary's final decision.

## CONCLUSION

Accordingly, because the Secretary's final decision is not supported by substantial evidence in the record as a whole, the court reverses. Based on the above, **IT IS HEREBY ORDERED** that:

1. The Secretary's motion for summary judgment [ECF No. 17] is denied;

---

[6] Because the court concludes that there is not substantial evidence bearing on Nomo-Ongolo's financial integrity, permissive exclusion is also not warranted under the "otherwise sanctioned" language of Section 1128(b)(5).

2. Nomo-Ongolo's motion for summary judgment [ECF No. 21] is granted;

3. The Secretary's final decision is reversed; and

4. Nomo-Ongolo is eligible for reinstatement as a participant in all federal health programs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 27, 2018

                                                                 s/David S. Doty
                                                                 David S. Doty, Judge
                                                                 United States District Court